**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| SALVATORE BADALAMENTE and SHANNON BADALAMENTE, | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| vs. | : | |
|  | : | |
| MONMOUTH COUNTY PROSECUTOR'S OFFICE, THOMAS FICHTER, ESQ, individually and in his capacity as Assistant Monmouth County Prosecutor for the Monmouth County Prosecutor's Office, MONMOUTH COUNTY SHERIFF'S DEPARTMENT, MARLBORO TOWNSHIP, MARLBORO TOWNSHIP POLICE DEPARTMENT, EDWARD CLAYTON, individually and in his capacity as Detective and/or Officer of the Marlboro Township Police Department, ERIC SINGER, individually and in his capacity as investigator for the Monmouth County Prosecutor's Office, JOHN DOES 1-10, individually and in their capacity as employees and/or investigators with the Monmouth County Prosecutor's Office, JOHN DOES 11-20, individually and in their capacity as employees and/or Monmouth County Sheriff's Officers for Monmouth County, and JOHN DOES 21-30, individually and in their capacity as employees and/or Officers for the Marlboro Township Police Department, | : | Civil Action No. 08-2501 |
|  | : | **OPINION** |
| Defendants. | : | |

---

**WOLFSON, United States District Judge:**

      Presently before the Court are four separate unopposed motions for summary judgment[1] filed by Defendants Monmouth County Prosecutor's Office ("Monmouth PO"), Thomas Fichter ("Fichter"), Eric Singer ("Singer), Monmouth County Sheriff's Department ("Monmouth SD"), Marlboro Township ("Marlboro Twp."), Marlboro Township Police Department ("Marlboro PD"), and Edward Clayton ("Clayton") (collectively referred to as "Defendants"),[2] to dismiss the 23-count Complaint filed by pro se Plaintiffs Salvatore Badalamente ("Slavatore") and Shannon Badalamente ("Shannon") (collectively "Plaintiffs").   The Complaint asserts a host of violations of constitutional rights and various other claims under New Jersey law, stemming from the alleged false arrest and indictment of Slavatore for conspiracy to commit insurance fraud.   For the reasons that follow, the Court finds that there are no disputed issues of material fact, and based on the record, Defendants are entitled to summary judgment.   Accordingly, Defendants' motions are granted.

## I.      Background

      Because the pro se Plaintiffs did not respond nor contest the facts asserted by Defendants as required by Fed. R. Civ. P. 56(c), the Court considers those facts as undisputed so long as they are properly supported by the record.   Fed. R. Civ. P. 56(e)(2); Bank of Am., N.A. v. Colony Park at Benders Church, LP, No. 09-00705, 2011 WL 925411, at *3 (E.D. Pa. March 17, 2011).

      Plaintiffs were long-time residents of New Jersey, however they moved to Georgia in

---

[1]      As the Court will more fully explain later in this Opinion, Plaintiffs have failed to respond to Defendants' motions for summary judgment.   As such, these motions will be considered as unopposed.

[2]      For the sake of clarity, the Court will also refer to Fichter, Singer and Clayton as "individual defendants", and will refer to Monmouth PO, Monmouth SD, Malboro Twp., and Marlboro PD as "institutional defendants."

December 2005.  From 2003 to 2004, Marlboro PD and Monmouth PO, in response to a report of suspected fraudulent leasing of vehicles, started an investigation on an individual named Paul Brennan ("Brennan"), who operated a company called Shore Classics.  See Monmouth County Grand Jury Transcript, State of New Jersey v. John T. Colatrella, et al, May 22, 2006 ("Transcript"), pp. 6-8.  During the investigation, Brennan admitted to conducting a conspiracy, along with other individuals, involving the fraudulent leasing and insuring of "shell" or non-existent classic vehicles, with the intended purpose of reporting these vehicles as stolen and collecting the insurance proceeds.  See Statement of Paul Brennan on Aug. 28, 2003.  Brennan also indicated that Salvatore was involved in the conspiracy as an employee of Shore Classics.  Id. at 37-38.  Specifically, Brennan stated that Salvatore would find pictures and obtain fictitious titles of classic cars, or sometimes shells of classic cars, and presented them as real cars to the leasing and insurance companies in order to secure fraudulent leases and insurance policies.  Id. at 20, 26-27, 37-38.  Marlboro PD also obtained statements from Michael Ruales, a former employee of Shore Classics during Spring and Summer of 2001, who corroborated that Salvatore acquired shells on the internet and used them to obtain fraudulent leases.  See Statement of Michael Ruales on Apr. 3, 2003.

On May 22, 2006, Fichter, the Assistant Prosecutor of Monmouth PO, presented the case to a grand jury.  Fitchter offered Clayton, a detective for the Marlboro PD, as the sole witness.  Clayton provided testimony as to the information gathered during the investigation by the Marlboro PD and Monmouth PO, including the statements of Brennan and Michael Ruales.  See Transcript, pp. 1, 5. Subsequently, on June 5, 2006, the grand jury returned an indictment against Salvatore and 15 other individuals, which specifically charged Salvatore with "Conspiracy - Theft by Deception," a second degree crime.  See Monmouth County Grand Jury Indictment # 06-06-01154, .  The next day,

Monmouth County PD arrested the individuals named in the indictment; however, because Salvatore had already moved to Georgia by that time, he was not brought into custody.  As a result, Monmouth PO issued a press release on its website, detailing the charges against each defendant, provided a description of the allegations, and listed the bail status of each defendant.  See Press Release by Monmouth PO on Jun. 13, 2006.  Since Salvatore remained at large, the press statement stated that "Salvatore Badalamente ($35,000 w/10%) was located in Georgia.  Arrangements are being made to serve him with the warrant.  He is the only co-conspirator who remains a fugitive."[3]  Id. at p. 3.

On June 16, 2006, Salvatore turned himself in first at the Woodbury Police Station, then the Middletown Police Department, and finally at the Monmouth County Sheriff's Office.[4]  Upon notifying the Monmouth PO, Singer, an investigator with the Monmouth PO, and another detective, arrived to take custody of Salvatore.  Salvatore alleges that he was hand-cuffed, taken out of the Sheriff's Office through the public entrance, was humiliated by Singer and the detective in front of his father, and was forced to lay down in the back seat of the car used to transport him, because the front seat was pushed all the way back so that there was no leg room.  Compl., ¶ 45-51.  Salvatore further alleges that Singer and the detective made him rest his head on a hardcover book about classic cars.  Compl. ¶ 51.  However, Plaintiffs do not allege that Salvatore suffered any physical

---

[3]      The Court notes that this indictment was ultimately dismissed by the Honorable Anthony J. Mellaci, Jr., J.S.C., on April 5, 2007.  See Declaration of Howard M. Nirenberg, Exhibit J.

[4]      The Complaint alleges that Salvatore did not turn himself in until May 16, 2007. Compl. ¶ 39.  Defendants dispute this claim, and assert that Salvatore turned himself in on June 16, 2006.  To support this assertion, Defendants submitted a copy of the arrest report of Salvatore by Singer, dated June 16, 2006.  See Id., Exhibit H.  Therefore, because Plaintiffs did not oppose Defendants' allegations and because Defendants properly supported their allegations with the arrest report, the Court accepts June 16, 2006, as the date of the arrest.

injuries, and while Salvatore alleges in the Complaint that he suffered emotional distress, Plaintiffs failed to present any evidence of such distress.[5]

Plaintiffs filed the instant 23-count Complaint on May 21, 2008. These counts include: violations of the Fourth and Fourteenth Amendments of the United States Constitution for malicious prosecution, false arrest, and excessive force (Count I); violations of the Fourth and Fourteenth Amendments for failure to supervise and discipline (Count II); violations of the Fourth and Fourteenth Amendments for inadequate hiring and training procedures (Count III);[6] violations of the New Jersey Constitution (Counts V and VI); claims under the New Jersey Tort Claims Act ("NJTCA") (Count VII); violations under the New Jersey Civil Rights Act ("NJCRA") (Count VIII); common-law false arrest (Count IX); common-law malicious prosecution (Count X); common-law intentional infliction of emotional distress (Count XI and XX); common-law battery (Count XII); common-law false imprisonment (Count XIII); common-law assault (Count XIV); common-law defamation (Count XVI); common-law negligent supervision and training (Count XVII); common-law conspiracy (Count XVIII); violations of the New Jersey Laws Against Discrimination ("NJLAD") (Count XIX); common-law negligent infliction of emotional distress (Count XXI); and common-law loss of consortium (Count XXII). The Complaint also seeks injunctive relief that would require Defendants to remove all references of Salvatore's indictment from any and all websites belonging and/or in the

---

[5]     Plaintiffs also alleges some irregularities regarding bail, suggesting that Salvatore was unable to make bail due to a mis-communication regarding the bail amount. Compl., ¶ 43-44. However, Plaintiffs alleges later in the Complaint that Salvatore was able to travel back and forth between New Jersey and Georgia during the prosecution of the case, which would indicate that he had indeed made bail. Compl., ¶ 53.

[6]     Count IV is a general allegation of violations of due process under the Fourteenth Amendment, which is already covered under Counts I, II, and III. As such, the Court will address this Count IV in that context.

control of Defendants (Count XV), as well as claims for punitive damages (Count XXIII).  After a period of discovery, Defendants filed the instant motions for summary judgment.  Pro se Plaintiffs, despite receiving several extensions by the United States Magistrate Judge, filed no opposition.[7] Finally, the Court issued a Letter Order on January 11, 2011, advising the parties that it will consider the instant motions as unopposed, and to date, Plaintiffs still have not opposed the motions or otherwise responded to the Court's Letter Order.  As such, these motions will be considered unopposed.

## II.    Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d

---

[7]     The Magistrate Judge, in two separate orders, granted Plaintiffs extension of time to file their opposition.  See Docket Entry 38, 39.  Indeed, in the second Order dated December 17, 2010, the Magistrate Judge indicated that no more extensions would be granted.  Even after these extensions, Plaintiffs failed to file their opposition to Defendants' motions for summary judgment.

at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008).  If a non-movant fails to oppose the motion, Rule 56(e) provides that the Court may grant the motion for summary judgment "if appropriate."  See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.3d 168, 175 (3d Cir.1990); Damiano v. Sony Music Entm't, 975 F.Supp. 623, 627 (D.N.J.1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created).  The motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.  When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support."  Carp v. IRS, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan.28, 2002) (quoting Anchorage Assocs., 922 F.2d at 175).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment."  Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. March 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n. 8 (E.D.Pa. June 20, 2000).

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is

7

a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  A nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. <u>S.E.C. v. Antar</u>, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

If the non-movant fails to oppose the motion for summary judgment, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." <u>See</u>, <u>e.g.</u>, <u>Anchorage Assoc. v. V.I. Bd. of Tax Rev.</u>, 922 F.2d 168, 175 (3d Cir. 1990); <u>see also</u> <u>Damiano v. Sony Music Entm't</u>, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiffs argument was unopposed, and thus no genuine issue of material fact was created). When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." <u>Carp v. Internal Revenue Serv.</u>, 2002 U.S. Dist. LEXIS 2921, at *2 (D.N.J. Jan. 28, 2002) (quoting <u>Anchorage Assoc.</u>, 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." <u>Morris v. Orman</u>, No. 87-5149, 1989 U.S. Dist. LEXIS 1876 at *8 (E.D. Pa. Mar. 1, 1989) (citing <u>Childers v. Joseph</u>, 842 F.2d 689 (3d Cir.1988)); <u>see also</u> <u>Atkinson v. Cty. of Phila.</u>, 2000 U.S. Dist. LEXIS 8500, 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000). Here, Plaintiffs have failed to oppose the instant summary judgment motions, despite this Court providing them with notice of the need to respond.  Thus, the Court will proceed accordingly.

**III.    Discussion**

**A. Constitutional Claims**

Plaintiffs allege violations of the federal Constitution under 42 U.S.C. § 1983, as well as the

New Jersey Constitution under the NJCRA.  As the allegations under the separate constitutions are virtually identical, and federal and New Jersey law governing these violations are substantially similar, the Court will address them together.  These claims can be separated as claims against the individual defendants and those against the institutional defendants.

### 1.  Individual Claims (Federal - Counts I & IV; State - Counts V, VI & VIII)

With respect to the claims for malicious prosecution, excessive force and false arrest, the individual defendants claim that they are entitled to qualified immunity.[8]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010) (quoting Pearson v. Callahan, 129 S.Ct. 808, 815 (2009)).  If a reasonable officer is not on notice that his or her conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate. Id.  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  Id.  "The immunities of municipalities and their officials sued directly under [the New Jersey Constitution] are identical to those provided by federal law."  Lloyd v. Borough of Stone Harbor, 179 N.J. Super. 496, 517 (Ch. Div. 1981); see also J.S. v. Lee, No. L-783-10, 2011 WL 1344997, at *3 (N.J. Super. Ct. App. Div. Apr. 11, 2011) (applying the federal qualified immunity standard to address both federal § 1983 claims and state constitution claims under NJCRA).

The Supreme Court has established a two-part analysis to determine if qualified immunity is

---

[8]	Although Plaintiffs sue the individual defendants in their official capacity as well as their individual capacity, the Court need not analyze these claims against the individual defendants in their individual capacity because the allegations in the Complaint all relate to conduct by these defendants while acting in their official capacity.

appropriate: 1) whether the official's conduct violated a constitutional or federal right; and 2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Pearson, 129 S.Ct. at 815-16.  Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. Id. at 818.  The right is "clearly established" only if the right was sufficiently clear that a reasonable official would understand that what he is doing violates that right.  Ray, 626 F.3d at 174.  Even if the officer made a mistake about the legal constraints on his actions, as long as the mistake was reasonable, qualified immunity still applies.  Id.  To avoid hindsight, the officer's actions is judged from the perspective of a reasonable officer under the circumstances.  Id.

In each of the claims below, the Court will determine whether qualified immunity applies to the individual defendants.

### i. Malicious Prosecution

Plaintiffs allege that Fichter, Singer and Clayton maliciously prosecuted Salvatore by intentionally providing false testimony and prosecuting Salvatore for crimes he did not commit.  The Court finds that the individual defendants are entitled to qualified immunity on this claim.

"To prove malicious prosecution under § 1983, a plaintiff must show that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).  New Jersey courts apply virtually the same standard under state law. LoBiondo v. Schwartz, 199 N.J. 62, 89 (2009) ("Malicious prosecution requires the plaintiff to

10

prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.").  Under both standards, Plaintiffs must satisfy each of the elements.  Id.; Kossler, 564 F.3d at 186.

Here, Plaintiffs fail to establish a lack of probable cause.  First, while Plaintiffs accuse Fichter, Singer and Clayton of intentionally supplying the grand jury with false testimony, the evidence proves otherwise.   The Grand Jury Transcript shows that the testimony provided by Clayton, the government's sole witness, was consistent with the statements that Clayton obtained from Brennan and Michael Ruales.  Second, these statements clearly identified Salvatore as a participant in the insurance fraud; this sufficiently establishes probable cause.  Lastly, while Brennan admitted that he did not provide additional payments to Salvatore for his part in the fraud, apart from this salary, that fact alone is not definitive proof that Salvatore did not participate in the conspiracy, as Plaintiffs allege in the Complaint.  Rather, it is reasonable for the individual defendants to infer from Brennan's statement that Salvatore's employment and his salary were dependent upon Salvatore's participation in the fraud in establishing probable cause.  As such, Plaintiffs fail to establish all the elements of malicious prosecution under both federal and New Jersey law, and thus individual defendants are entitled to qualified immunity on this claim.

**ii. False Arrest**

Plaintiffs allege that Salvatore was falsely arrested because Singer lacked probable cause to arrest him.  The Court does not agree.  Similar to a claim for malicious prosecution, a false arrest claim is predicated upon a lack of probable cause.  Couden v. Duffy, 446 F.3d 483, 494 (3d Cir. 2006); Connor v. Powell, 162 N.J. 397, 408 (2000).  As stated above, there was sufficient probable

cause to believe that Salvatore was involved in the insurance fraud.  Furthermore, an indictment was issued against Salvatore; a grand jury, not Singer, found that there was sufficient evidence to support the charge that Salvatore committed a crime.  An arrest made pursuant to a warrant supported by probable cause is presumed lawful.  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000); State v. Jones, 143 N.J. 4, 13 (1995).  Accordingly, because Plaintiffs cannot establish that a constitutional violation of false arrest was committed against Salvatore, the individual defendants are entitled to qualified immunity on the claim of false arrest.

### iii.  Excessive Force

Plaintiffs allege that Singer used excessive force when arresting Salvatore.  Specifically, Plaintiffs aver that the use of handcuffs by Singer was unnecessary for an arrestee of a non-violent crime, that Singer intentionally humiliated Salvatore by escorting him through the public entrance of the building, and that Singer inflicted emotional harm by depriving Salvatore of leg room when placing him in the back of the car and making him rest his head on top of a hardcover book about classic cars.

Claims of excessive force by police officers, in the context of an arrest, investigatory stop, or other "seizure," should be analyzed under the Fourth Amendment.  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); Graham v. Connor, 490 U.S. 386, 395 (1989).  To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable.  Curley v. Klem, 499 F.3d 199, 203 (3d Cir. 2007).  The test of Fourth Amendment reasonableness of force used during seizure is whether, under the totality of the circumstances, officers' actions are objectively reasonable in light of facts and circumstances confronting them, without regard to their underlying intent or motivations.  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.

2004); Graham, 490 U.S. at 397.  An excessive force claim must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Rivas, 365 F.3d at 198; Lamont v. New Jersey, No. 09-1845, 2011 WL 753856, at *5 (3d Cir. Mar. 4, 2011) ("Monday morning quarterbacking is not allowed").  While the absence of physical injury does not necessarily signify that the force was not excessive, excessive force claims must be so egregious as to be constitutionally excessive, and the presence of some physical injury is relevant to that determination.  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  New Jersey courts apply the federal standard when addressing  excessive force claims brought under the state constitution.  See State v. Ravotto, 169 N.J. 227, 235-37 (2001) (applying the federal standard for both the federal and state constitutional claims); Watters v. Emery, No. L-19-05, 2008 WL 1820700, at * 3-4 (N.J. Super. Ct. App. Div. Apr. 24, 2008) (same); Norcross v. Town of Hammonton, No. 04-2536, 2008 U.S. Dist. LEXIS 9067, at *11 (D.N.J. Feb. 5, 2008) (finding that the excessive force standard under the New Jersey constitution is the same as under the federal constitution).

In this case, the record shows that Singer's actions during his arrest of Salvatore were reasonable.  Singer stated that it was made clear to Salvatore, at the time of the arrest, that  handcuffs are customary for the protection of the officers as well as that of the general public.  Singer also asserted that he escorted Salvatore through the public entrance not for the purpose of embarrassing Salvatore, but simply because there was no need to use an alternate, non-public exit since Salvatore did not pose a significant threat to the public, an assumption to which Salvatore agreed.  Deposition of Salvatore Badalamente on Oct. 28, 2009, p. 207-08.  With regard to the alleged emotional harm Salvatore suffered as a result of his treatment by Singer during the arrest, Plaintiffs submitted no evidence of such harm other than their bald assertions; indeed, while Plaintiffs argue that Salvatore

has been treated for depression, they submitted no record of such treatment, nor do they even assert that the treatment was directly related to the arrest. Thus, under the totality of circumstances, the Court finds no action so egregious as to be constitutionally excessive. Because there is no constitutional violation of excessive force, the individual defendants are entitled to qualified immunity.

### 2. Institutional Claims (Federal - Counts II, III & IV; State - Counts V, VI & VIII)

To begin, the Court must make clear that municipalities cannot be responsible for damages under § 1983 on a vicarious liability theory, and can be held liable only if the municipality itself commits a constitutional violation. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." McTernan v. City of York, PA, 564 F.3d 636, 657 (3d Cir. 2009); See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Policy is implemented when a "decision maker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict." Id. at 658. Custom, on the other hand, is adopted when, though not authorized by law, "such practices . . . are so permanent and well-settled as to virtually constitute law." Id. New Jersey courts apply the Monell standard to claims under both the federal constitution and the New Jersey constitution. See Besler v. Board of Educ. of West Windsor-Plainsboro Reg'l School Dist., 201 N.J. 544, 564-565 (2010); Bayer v. Twp. of Union, 414 N.J. Super. 238, 270 (App. Div. 2010) (addressing municipal liability only under the federal standard even though both federal and state constitutional claims were asserted).

When a §1983 claim is predicated upon a municipality's failure to supervise, train or otherwise establish proper procedures to prevent the occurrences of constitutional violations by its employees, plaintiff must adduce evidence that a policy-maker 1) had notice that a constitutional violation was likely to occur, and 2) acted with deliberate indifference to the risk.  Hernandez v. Borough of Palisades Park Police Dep't, 58 Fed.Appx. 909, 912 (3d Cir. 2003) (citing Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)).  Generally, notice is established through a pattern of known prior violations.  Id. at 913; Berg, 219 F.3d at 276.  Only in the rare instance that a constitutional violation is so "known and obvious" or the "highly predictable consequence" of an ongoing course of action is knowledge of past violations unnecessary.  Id.

In the instant action, Plaintiffs allege two theories of municipal liability.  First, Plaintiffs contend that the institutional defendants failed to supervise and discipline the individual defendants for violating Salvatore's constitutional rights.   Second, Plaintiffs assert that the institutional defendants had inadequate hiring and training procedures that resulted in the violation of Salvatore's rights.  However, Plaintiffs fall well short of an adequate showing of either claim.  Plaintiffs make no factual allegations, or otherwise submit supporting evidence, that any policy, custom, regulation or decision officially or informally adopted by the institutional defendants directly contributed to any constitutional violations committed by the individual defendants; in fact, this Court has found that the individual defendants have committed no constitutional violations in the first instance.  Plaintiffs also point to no history of past violations that would put the institutional defendants on notice that future violations would likely to occur, nor do Plaintiffs show that the institutional defendants acted with deliberate indifference to their constitutional rights.  Accordingly, the Court finds that even when viewing the facts in light most favorable to Plaintiffs, no reasonable jury could find that Plaintiffs

have established liability against the institutional defendants based on the standards enunciated above. As such, the institutional defendants are entitled to judgment as a matter of law as to the constitutional claims against them.

### B. State Common-Law Claims (Counts IX-XVI, XVII, XVIII, and XX-XXII)

Under the doctrine of sovereign immunity, the State may not be sued without its consent. In that regard, all tort claims made against public entities and public employees in New Jersey are governed by the NJTCA. The NJTCA states that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a). "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). However, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3.

The NJTCA imposes certain procedural requirements for any individual seeking to file claims against public entities or public employees acting within the scope of their employment. "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. "A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8. "The claimant shall be forever barred from recovering against a public entity or public employee if . . . [h]e failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9." Id.

16

Section 59:8-9 states that "[a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. 59:8-9.  In effect, under the NJTCA, a claimant is absolutely barred from recovery against a public entity or public employee if he does not file a notice of claim within one year of the accrual. Reale v. Wayne Twp., 132 N.J.Super. 100, 107 (Law Div. 1975).  All common-law tort claims, both intentional and negligent claims, are subjected to the NJTCA notice provisions. Velez v. City of Jersey City, 180 N.J. 284, 294 (2004) ("We conclude that the absence of any reference to negligence within the definition of 'injury' is consistent with the Legislature's intent that the Act's notice requirements encompass injuries arising from intentional conduct as well as negligent conduct").

In the instant matter, Plaintiffs assert the following state common-law claims: false arrest, malicious prosecution, intentional infliction of emotional distress, battery, false imprisonment, assault, defamation, negligent supervision and training, conspiracy, negligent infliction of emotional distress, and loss of consortium.  Plaintiffs aver in the Complaint that the Notice of Claim as required by the NJTCA was forwarded to Defendants on July 2, 2007.  However, all events giving rise to Plaintiffs' claims occurred on or before June 16, 2006.  As such, in order to preserve their claims against Defendants under the NJTCA, Plaintiffs must have given notice to Defendants by June 16, 2007, at the latest, and it does not appear from the record that Plaintiffs are entitled to any equitable tolling of this date.  Thus, because Plaintiff did not forward their Notice of Claims to Defendants in compliance with the applicable notice provisions, Plaintiffs are barred from recovery on all state common-law claims against the institutional defendants.  Furthermore, because all acts complained

of are within the scope of employment of the individual defendants, the notice provisions of the NJTCA apply to Plaintiffs' claims against the individual defendants as well, thus Plaintiffs are similarly barred from recovery on all state common-law claims against the individual defendants. Accordingly, the Court finds that Defendants are entitled to judgments as a matter of law on all state common-law claims.

### C.  NJLAD Claim (Count XIX)

Plaintiffs allege that Defendants have taken actions against Salvatore on account of his race, in violation of NJLAD.[9]  The Court cannot determine the exact cause of action that would give rise to Plaintiffs' NJLAD claim.  The Court's examination of the NJLAD provisions reveals that NJLAD mostly prohibits discrimination for employment purposes, for accommodation purposes, for contractual purposes, and in various other economic transactions.  See N.J.S.A. 10:5-4, 10:5-12. There is no prohibition against the sort of actions about which Plaintiffs complain.  For example, in Ptaszynski v. Ehiri, No. MID-L-3034-00, 2006 WL 2346012 (N.J. Super. App. Div. Aug. 15, 2006), the court was faced with a NJLAD claim that arose from two police officers' actions in an alleged false arrest scenario.  The court held that:

> Plaintiffs alleged that Ptaszynski and Olah used racial epithets while carrying out their arrest and in subsequent interactions while at the police station.  Both officers hotly disputed these allegations.  Accepting plaintiffs' contentions as true for purposes of our analysis, we discern no legal basis to proceed under [NJLAD].  While we obviously do not condone the use by police officers of any discriminatory or offensive language, the utterance of these statements alone does not establish a cognizable claim under the LAD.

Id. at *2.  Accordingly, the Court finds that Plaintiffs lack a proper basis for their NJLAD claim, and

---

[9]     The notice provisions of the NJTCA are not applicable to claims under NJLAD. Motley v. State, Div. Of State Police, No. L-342-04, 2010 WL 4621498, at *2 (N.J. Super. App. Div. Nov. 15, 2010).

therefore, Defendants are entitled to judgment as a matter of law on this claim as well.

### D.  Prayers for Relief (Counts XV & XXIII)

Lastly, the Court addresses the two remaining counts in the Complaint: Plaintiffs' requests for injunctive relief and punitive damages.  Because the Court has already all of Plaintiffs' substantive counts, there is no claim under which Plaintiffs may seek relief.  As such, these two counts are hereby dismissed.

### IV.   Conclusion

For the foregoing reasons, Defendants' motions are **GRANTED**, and Plaintiffs' Complaint is **DISMISSED**.  An appropriate Order shall follow.

       /s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: May 17, 2011